UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LORYN O'DONNELL                                    CIVIL ACTION

VERSUS                                             NO. 21-2290

CENTURY SURETY CO., ET AL                          SECTION: "B"(4)

ORDER & REASONS

Oral argument on defendant Century Surety Company's opposed motion to dismiss (Rec. Doc. 11) was received on Wednesday, April 20, 2022. Accordingly, after consideration of the arguments from all parties' counsel, the record, and applicable law,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss (Rec. Doc. 11) is **GRANTED in part**, dismissing all assault and battery claims against it; and **DENIED in part without prejudice**, retaining plaintiff's claims for intentional infliction of emotional distress, false imprisonment, and wrongful eviction.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff Loryn O'Donnell ("O'Donnell" or "Plaintiff")) filed the instant suit seeking damages against defendants Lions Inn Bed & Breakfast ("Lions Inn"), Benjamin Walley ("Walley"), and Century Surety Company ("Century") as the insurer of Lions Inn (collectively "defendants"). Rec. Doc. 1 (Complaint). The Court accepts the following factual allegations as true for purposes of this motion to dismiss.

On December 21, 2020, plaintiff visited New Orleans on business to meet with a client, Khater Salomon ("Salomon"). *Id.* For the meeting, she booked a room at the Lions Inn, located at 2517 Chartres Street. *Id.* On the afternoon of December 22, 2020, plaintiff was sitting in the garden patio of the Lions Inn when she was approached by the owner of the hotel, Edward Patin ("Patin"). He was accompanied by someone plaintiff believed to be an employee of the Lions Inn, Benjamin Walley ("Walley"). *Id.* The three of them talked together until plaintiff left to prepare for a business dinner with Salomon. Rec. Doc. 1.

At the business dinner, plaintiff noticed that Walley was also in attendance. She later learned that Salomon was also considering hiring Walley for a position related to plaintiff's project. *Id.* Because of this, Walley also attended the business meeting. *Id.* After dinner, Salomon drove plaintiff and Walley back to the Lions Inn, dropping them off at approximately 11:30 p.m. *Id.* At that time, plaintiff decided to return to her room, change clothes in order to go to a local bar, and celebrate her success in signing Salomon as a client. *Id.* After changing clothes, plaintiff walked out onto the garden patio where Walley was observed. Rec. Doc. 1. Walley informed plaintiff that she should not walk alone in the French Quarter as it was not safe. Plaintiff told Walley that she would rather walk alone and began walking away towards the bar. *Id.* Walley followed her. *Id.*

Upon arriving at the bar, plaintiff and Walley noticed that the establishment was closed. Rec. Doc. 1. Plaintiff then asked Walley if there was a place nearby where she could buy a drink and head back to the hotel. *Id.* Walley told plaintiff that there was a store nearby, and he would walk with her to the store. *Id.* Plaintiff declined Walley's offer and told him that she would order an Uber car and go alone. *Id.* Before she could do so, Walley called an Uber and informed plaintiff it was en route. *Id.* Upon its arrival, both plaintiff and Walley got in the Uber and headed to the store. Rec. Doc. 1. While at the store, plaintiff purchased a bottle of vodka and orange juice. *Id.* Both plaintiff and Walley then got back into the Uber and returned to the Lions Inn. *Id.*

Upon arriving at the hotel, she asked Walley if he could open the hotel's hot tub area before leaving for the night, to which Walley agreed. *Id.* Plaintiff then went to her room to change into her bathing suit. *Id.* Upon returning to the patio, plaintiff noticed that Walley was still there and that he had also set out multiple red drinking cups for the vodka and orange juice. Rec. Doc. 1. At this point, plaintiff asserts that she began to feel uncomfortable about Walley "refusing to leave her alone." *Id.* Plaintiff states that she did not want Walley to watch her take her clothes off, so she asked him to turn the patio lights off "before he leaves." *Id.* Once Walley left to turn off the lights, plaintiff got in the hot tub. *Id.* Walley, however, returned to the

3

patio and mixed himself a drink. *Id.* Walley then undressed in front of plaintiff and joined her in the hot tub. Rec. Doc. 1.

After Walley entered the hot tub, he used crude and vulgar words to make sexual advances toward plaintiff. *Id.* When plaintiff declined Walley's advances, she alleges that Walley flew into a "fit of volcanic rage," violently slamming his hands onto the water's surface. *Id.* Walley then allegedly stormed out of the hot tub and began cursing, pacing madly, and hurling insults at plaintiff. *Id.* Walley then picked up plaintiff's phone and hurled it in the hot tub. Rec. Doc. 1. Plaintiff attempted to get out of the hot tub, but asserts that Walley attacked her, grabbed the top of her shoulders, and pushed her body under the water. *Id.* Plaintiff was able to forcibly move to the other end of the hot tub. Rec. Doc. 1. Following Walley's alleged attack, plaintiff tried to get out of the hot tub, but Walley grabbed her, attempting to force her back into the water. *Id.* Plaintiff eventually escaped Walley's grasp, grabbed her belongings, and headed toward the building entrance that led to her room. *Id.*

Upon reaching the doorway of her building, she locked it with Walley still outside on the patio. *Id.* During this time, plaintiff claims Walley began shouting threats at her and demanding that she stay in her room until sunrise. *Id.* Walley also allegedly yelled to plaintiff that if she did not leave the hotel the moment the sun came up, he would go inside and drag her from her room. Rec.

4

Doc. 1. Plaintiff ran to her hotel room, locked the door, and barricaded the door with furniture from her room. *Id.* Shortly after, plaintiff asserts that she heard Walley enter the building and start pacing in front of her door. *Id.*

Over the next several hours, plaintiff packed her things, dried out her phone, ordered a Lyft, and waited for it to arrive. *Id.* Once plaintiff received notification that her Lyft had arrived, she exited her room towards the hotel lobby. *Id.* At that moment, she noticed her path was blocked by Walley, who was lying directly next to the staircase she needed to descend. Rec. Doc. 1. With her luggage and purse in tow, she attempted to go around Walley, but he swiped his arms at her legs, hitting them to catch her. *Id.* However, Walley was unsuccessful in his attempt and plaintiff was able to escape to her Lyft safely. *Id.*

On December 13, 2021, plaintiff filed this action invoking federal diversity jurisdiction. Rec. Doc. 1. She claimed that defendant Walley is liable to her for tortious acts in violation of La. Civil code article 2315. *Id.* Because Walley was an employee of the Lions Inn, she claims defendant Lions Inn is vicariously liable for the acts of Walley. *Id.* Additionally, plaintiff asserted that the Lions Inn negligently failed to use reasonable care in screening, hiring, training, supervising, and retaining its employees, including Walley. *Id.* Plaintiff also claims the Lions Inn failed to provide her adequate security and failed to perform

5

its duty of protection. *Id.* Concerning defendant Century, plaintiff asserted that at all times pertinent to her allegations, an insurance policy provided by Century to the Lions Inn was in full effect and inures to her benefit. Rec. Doc. 1.

Subsequently, on January 14, 2022, defendant Century filed the instant motion to dismiss. Rec. Doc. 11. According to Century, the policy it issued to Lions Inn contains a direct assault and battery exclusion, which bars recovery for an alleged assault and battery, and also bars recovery for "any other act or omission, either leading up to, during, or following any alleged assault and battery" on Lions Inn's premise. *Id.* Century also attached the insurance policy as an exhibit to its motion to dismiss. *Id.*

On January 25, 2022, plaintiff filed an opposition to Century's motion, arguing that the policy's assault and battery exclusion does not bar all of plaintiff's claims because she correctly asserted several other claims that are entirely removed from the assault and battery, such as: (1) intentional infliction of emotional distress; (2) false imprisonment; and (3) wrongful eviction. Rec. Doc. 12. On March 7, 2022, defendant Lions Inn filed an opposition to Century's motion to dismiss, asserting two distinct arguments: (1) plaintiff's allegation that the insurance policy covers the alleged incident must be accepted as true; and (2) the Court cannot pierce the pleadings to consider Century's

its duty of protection. *Id.* Concerning defendant Century, plaintiff asserted that at all times pertinent to her allegations, an insurance policy provided by Century to the Lions Inn was in full effect and inures to her benefit. Rec. Doc. 1.

Subsequently, on January 14, 2022, defendant Century filed the instant motion to dismiss. Rec. Doc. 11. According to Century, the policy it issued to Lions Inn contains a direct assault and battery exclusion, which bars recovery for an alleged assault and battery, and also bars recovery for "any other act or omission, either leading up to, during, or following any alleged assault and battery" on Lions Inn's premise. *Id.* Century also attached the insurance policy as an exhibit to its motion to dismiss. *Id.*

On January 25, 2022, plaintiff filed an opposition to Century's motion, arguing that the policy's assault and battery exclusion does not bar all of plaintiff's claims because she correctly asserted several other claims that are entirely removed from the assault and battery, such as: (1) intentional infliction of emotional distress; (2) false imprisonment; and (3) wrongful eviction. Rec. Doc. 12. On March 7, 2022, defendant Lions Inn filed an opposition to Century's motion to dismiss, asserting two distinct arguments: (1) plaintiff's allegation that the insurance policy covers the alleged incident must be accepted as true; and (2) the Court cannot pierce the pleadings to consider Century's

attached insurance policy without converting Century's motion to one for summary judgment. Rec. Doc. 19.

On March 15, 2022, Century filed a reply supporting its motion to dismiss. Rec. Doc. 23.

## II. LAW AND ANALYSIS

### A. 12(b)(6) Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotes omitted)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, the court is not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002). *A fortiori*, a complaint may be dismissed when

7

it appears "beyond a doubt that plaintiff can prove no set of facts" that would entitle him to prevail. *Twombly*, 550 U.S. at 560–61, 127 S.Ct. 1955; *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 399 (E.D. La. 2016). However, the Fifth Circuit has stated that motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and [are]...rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).

   **B. The Century Policy will be considered on this motion to dismiss.**

In ruling on a Rule 12(b)(6) motion, the court may consider not only the allegations in the Complaint, but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice. *See e.g., Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation omitted) (stating a court may consider Complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice). In addition, the court may consider any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). Significantly, when an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls. *U.S. ex rel.*

8

*Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (stating that if an allegation is contradicted by contents of an exhibit, the exhibit and not the allegation controls).

In *McDonald v. Kansas City S. Ry. Co.*, plaintiff Sharon McDonald, individually and as the personal representative of the Estate of Johnnie McDonald, filed suit against defendant Kansas City Southern Railway Company ("KCS"), alleging that her husband was exposed to toxic substances during the time he worked for defendant, which ultimately caused his premature death. No. CV 16-15975, 2017 WL 1709353 (E.D. La. May 3, 2017). Defendant moved to dismiss plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff entered into a binding settlement agreement that barred plaintiff's suit. *Id.* at *1. In support of this argument, KCS asked the Court to consider several emails in which purported to show that plaintiff entered into a binding agreement. *Id.* Plaintiff responded by arguing that defendant's motion should be converted to a motion for summary judgment because of the email attachments. *Id.*

On review, the Court began by asserting the rule of law in this circuit, particularly that "a court may consider documents attached to a motion to dismiss without converting it to a summary judgment motion if the documents are referred to in the complaint and are central to the plaintiff's claim." *Id*. In this case, the emails defendant attached to its motion to dismiss were not

9

referred to in the plaintiff's complaint. *McDonald*, 2017 WL 1709353 at *2. The court reasoned that because defendant's motion to dismiss was based on emails that fell outside the pleadings, the court had discretion either to accept the extraneous material and convert the motion to dismiss into a motion for summary judgment, or to decide the motion, as defendant styled it, under the principles of Rule 12(b)(6). *Id.* Ultimately, the Court decided to exercise its discretion to accept the emails and convert the defendant's motion to dismiss into a motion for summary judgment. *Id.*

This Court finds *McDonald* to be instructive, but also distinguishable from the case at bar. Unlike the emails in *McDonald*, the insurance policy Century attached as an exhibit to its motion to dismiss is in fact referenced in plaintiff's complaint. Paragraph 203 of plaintiff's complaint states, in pertinent part, "[A]t all times relevant to this petition, there was in full force and effect a policy of general liability insurance issued by the defendant, Century Surety Company, to and in favor of defendant, Lions Inn, which policy inures to the benefit of plaintiff…." Rec. Doc. 1 at pg. 22. Additionally, the language of the insurance policy, specifically the exclusion clauses, are central to plaintiff's claims and the determination of whether plaintiff can recover from Century. Accordingly, the Court will consider the insurance policy as part of Century's

10

motion to dismiss. *Mendler v. Derouen*, No. CIV.A. 08-4217, 2009 WL 411244 (E.D. La. Feb. 18, 2009) (recognizing the Court "may consider an insurance policy attached to a motion to dismiss as part of the pleadings if the document is referred to in the complaint and central to plaintiffs' claims."); *see also Leleux v. Hassan*, No. CV 17-1237, 2018 WL 328155 (W.D. La. Jan. 8, 2018) (finding that because the plaintiff's complaint referenced the documents defendant attached to his motion to dismiss, and given the documents are central to plaintiff's claims, the court can consider the exhibits as part of the motion to dismiss.)

### C. Plaintiff's Assault and Battery claims are barred under the Policy.

According to Louisiana law, an insurance policy is a contract that constitutes the law between the parties, and it must be interpreted in accordance with the general rules of contract interpretation set forth in the Louisiana Civil Code. *See Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La.2003); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007). The extent of insurance coverage is determined by the parties' intent as reflected by words in the policy. *See Richard v. Anadarko Petroleum Corp.*, 850 F.3d 701, 713 (5th Cir. 2017) (citing *Cadwallader*, 848 So.2d at 580). If the policy wording is clear, and it expresses the intent of the parties, the agreement must be enforced as written. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*,

767 F.3d 503, 512 (5th Cir. 2014) (citing *Cadwallader*, 848 So.2d at 580); La. Civ. Code art. 2046; *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). If an ambiguity exists, the ambiguity must be construed in favor of the party seeking coverage. *See Richard*, 850 F.3d at 714. Additionally, the Fifth Circuit has recognized that "[w]hen an exclusion precludes coverage for injuries 'arising out of' described conduct, the exclusion is given a broad, general, and comprehensive interpretation. A claim need only bear an incidental relationship to the described conduct for the exclusion to apply." *Scottsdale Ins. Co. v. Texas Sec. Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir.1999).

Policy Provisions

The policy at issue in this matter provides commercial general liability coverage to Lions Inn. The policy's insuring agreement states that Century "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy also contains an assault and battery exclusion, which excludes coverage for bodily injury, property damage, or personal and advertising injury "arising out of or resulting from":

> (a) any actual, threatened, or alleged assault or battery regardless of whether or not any action was undertaken or was alleged to have been undertaken in self-defense;

This exclusion unambiguously applies to plaintiff's assault and battery claims against Lions Inn Bed & Breakfast; and thus,

12

plaintiff has not pled "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

First and foremost, plaintiff alleged several acts qualifying as an assault and/or battery. Plaintiff alleged a battery when she asserted Walley grabbed the top of her shoulders and began pushing her head underwater in the hot tub. *See United Nat. Ins. Co. v. Paul & Mark's Inc.*, No. CIV.A. 10-799, 2011 WL 446280 (E.D. La. Feb. 4, 2011) (citing *Landry v. Bellanger*, 851 So.2d 943, 949 (La.2003) (defining battery as "a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact ….")) Likewise, plaintiff suffered an assault when she stated that she was fearful of Walley when he threw her phone at her in the pool. *Id.*; *State v. Gardner*, 2016-0192 (La. App. 1 Cir. 9/19/16), 204 So. 3d 265, 267-68 ("[T]he elements of assault are (1) the intent-to-scare mental element (general intent), (2) conduct by the defendant of the sort to arouse a reasonable apprehension of bodily harm, and (3) the resulting apprehension on the part of the victim.")

Because plaintiff is seeking damages arising out of and resulting from her alleged assault and battery, those claims are clearly barred by Century's assault and battery exclusion. Accordingly, Century's motion to dismiss is **granted in part**, dismissing all plaintiff's claims for assault and battery.

D. **The Assault and Battery Exclusion does not bar Plaintiff's remaining claims.**

Century asserts that in addition to plaintiff's assault and battery claims, her remaining tort claims should likewise be dismissed under the exclusion, *infra*. Defendant's argument rests on the interpretation of subsection (f) and section 2 of the exclusion.

Subsection (f) states, in pertinent part:

(f) any other act or omission, either leading up to, during or following any alleged assault or battery, on the part of the insured or anyone else for whom the insured may be legally responsible, in any way relating to, concurrently or in succession with 1. (a), (b), (c), (d) or (e), above.

While section 2 states,

2. We shall have no duty to defend or indemnify any claim, demand, "suit", action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:
(a) any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.
(b) any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.
(c) any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault is the proximate cause of injury.
(d) any actual or alleged injury arises out of any act or omission in connection with the prevention or suppression of assault or battery or any physical altercation.

Century contends that because the policy language is broad and covers not only an alleged assault and battery, but also any combination of an assault and battery with any other tortious act, plaintiff's additional tort claims should be dismissed. Specifically, Century argues that subsection (f) bars plaintiff's recovery because it states that she cannot recover for any act that occurred "either leading up to, during, or following [the] alleged assault and battery." According to Century, because plaintiff's claims for intentional infliction of emotional distress, false imprisonment, and wrongful eviction occurred in combination with, led up to, and/or followed her alleged assault and battery, all those claims should be dismissed.

In support, Century cites *Espinosa v. Accor N. Am., Inc.*, 2014-0001 (La. App. 4 Cir. 9/24/14), 148 So. 3d 244, *writ denied*, 2014-2446 (La. 2/13/15), 159 So. 3d 466, and *writ denied*, 2014-2453 (La. 2/13/15), 159 So. 3d 467, and *Proshee v. Shree, Inc.*, 2004-1145 (La. App. 3 Cir. 2/2/05), 893 So. 2d 939. Century argues that these cases stand for the proposition that Louisiana courts routinely uphold broad insurance policies such as the one at bar, denying recovery for non-assault and battery causes of action. See *Espinosa*, 148 So. 3d 244, 254 (finding Century's preclusion of coverage extended to "any other cause of action or claim arising out of or a result of," *inter alia*, an assault and battery, and bars "coverage for all of the claims asserted in this lawsuit, no

15

matter how artfully various theories of recovery are alleged, absent any other modifying provision in the policy."); *Proshee*, 893 So. 2d 939, 944 ("even if one finds that the robbery or failure to prevent the assault or battery is a non-assault or battery related cause, the policy exclusion clearly and unambiguously states that Century shall have no duty to defend any claim where 'any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.'")

However, those cases are distinguishable from the case at hand. In both *Espinosa* and *Proshee*, the claims before the court were for negligence. Specifically, the plaintiffs in both cases were suing their hotels for negligence, *e.g.*, negligent failure to provide adequate security and negligent failure to notice dangerousness of premises. In neither case did the plaintiffs allege other intentional tort claims. Moreover, the assault and battery exclusions before those Courts contained exclusions barring negligence claims arising out of alleged assaults and batteries.

Here, plaintiff not only alleged negligence against the Lions Inn, but also other intentional torts. These additional tort claims of intentional infliction of emotional distress, false imprisonment, and wrongful eviction are separate and distinct from the alleged assault and battery. In *Proshee*, the Court stated that

16

the Louisiana Fourth Circuit Court of Appeals decision in *Maise v. Cat's Meow, Inc.*, was instructive. *Proshee*, 893 So. 2d 939, 944; *Maise v. Cat's Meow, Inc.*, 96-1998 (La.App. 4 Cir. 10/16/96), 683 So.2d 846. In *Maise*, the Court held that irrespective of the fault alleged by plaintiff (whether negligence, intentional act or otherwise), **because their injuries arose out of a battery**, the policy provided no coverage because of its assault and battery exclusion. *Maise*, 683 So.2d at 847 (emphasis added).

Unlike the plaintiff in *Maise*, O'Donnell has alleged injuries separate and distinct from those suffered due to her alleged assault and battery. For example, plaintiff stated that she suffered severe emotional distress when Walley flew into a "fit of volcanic rage," cursing, pacing madly, and hurling insults at her. Rec. Doc. 1. This emotional injury is not connected to the physical injury plaintiff suffered when Walley grabbed her shoulders, pushing her head underwater in the hot tub. Additionally, plaintiff's false imprisonment claim did not arise out of the alleged assault and battery given she alleged that Walley unlawfully detained her when he commanded that she stay in her room and "loudly patrolled the hallways and patio" to make sure she did not leave her room. Lastly, the allegations surrounding the wrongful eviction claim do not arise out of the assault and battery because the claim is centered around Walley commanding that plaintiff evacuate the Lions Inn upon sunrise. Accordingly,

Century's motion to dismiss is **denied in part without prejudice**, retaining plaintiff's claims for intentional infliction of emotional distress, false imprisonment, and wrongful eviction.

New Orleans, Louisiana this 3rd day of May, 2022

                                         _____
                                       SENIOR UNITED STATES DISTRICT JUDGE